IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Keith Aaron Vann, #91011-111, | C/A No.: 1:17-1149-HMH-SVH |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| United States of America, and Rick Perkins, | |
| Defendants. | |

Keith Aaron Vann ("Plaintiff") is a *pro se* prisoner[1] in the custody of the federal Bureau of Prisons ("BOP") at Federal Correctional Institution in Estill, South Carolina ("FCI-Estill"), South Carolina, who filed this action alleging claims of negligence against the United States and Rick Perkins, the Assistant Health Services Administrator at FCI-Estill. This matter comes before the court on Defendants' motion for summary judgment requesting the court dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) and (6).[2] [ECF No. 19]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 20]. The motion having been fully briefed [ECF No. 23], it is ripe for disposition.

---

[1] Plaintiff was sentenced on May 21, 2013, to 121 months in prison by the United States District Court for the Northern District of California on convictions for conspiracy to commit mail and wire fraud (18 U.S.C. § 1349), wire fraud (18 U.S.C. § 1343), and money laundering (18 U.S.C. § 1957(A)). [ECF No. 19-1].

[2] Although Defendants' motion is titled as a summary judgment motion, it states it is being brought pursuant to 12(b) and recites a motion to dismiss standard. Both Plaintiff and Defendants presented materials outside of the pleadings. Because all parties had the opportunity to present material pertinent to the motion, the undersigned considers the motion as one for summary judgment, pursuant to Fed. R. Civ. P. 12(d).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for the district judge's consideration.

I.  Factual and Procedural Background

Plaintiff alleges Defendants were negligent in providing maintenance care for the continuous positive airway pressure ("CPAP") machine he uses daily. [ECF No. 1]. Plaintiff alleges that as a result of improper maintenance of the CPAP machine, he woke up with a severe headache, heart palpitations, labored breathing, chest pains, and a runny nose on October 2, 2016. *Id.* at 7. He claims damages of $25,000,000 for mental and emotional pain and distress. *Id.* at 8.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the court grant Defendants' motion.

II. Discussion

A.  Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

B.  Analysis

1.  Exhaustion of FTCA Claim and Individual Liability[3]

Plaintiff alleges negligence concerning maintenance of his CPAP machine while he was housed at FCI-Estill. The Federal Tort Claims Act ("FTCA") provides for a limited waiver of the Government's sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action for loss of property or personal injuries. 28 U.S.C. § 1346(b)(1). This limited waiver applies to the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* Under the FTCA, the court must determine liability in accordance with the substantive tort law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Therefore, South Carolina's substantive law controls.

To recover on a negligence claim under South Carolina law, "a plaintiff must

---

[3] To the extent that Defendants argue Plaintiff's claim for medical malpractice should be dismissed, Plaintiff has clarified in his response that he filed this suit alleging only negligence and not any constitutional law violation pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). [ECF No. 23 at 1].

3

prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (S.C. 2000). The BOP owes Plaintiff an affirmative legal duty in accordance with 18 U.S.C. § 4042, which provides that the BOP "shall . . . provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). For purposes of an FTCA claim, the duty is one of "reasonable care." *See Johnson v. U.S. Gov't*, 258 F. Supp. 372, 376 (E.D. Va. 1966) (holding that duty of care "only requires the exercise of ordinary diligence under the circumstances"); *see also Beckwith v. Hart*, 263 F. Supp. 2d 1018, 1022 (D. Md. 2003).

In FTCA actions, a remedy against the United States is exclusive of any other civil action or proceeding for money damages against the employee whose act or omission gave rise to the claim. 28 U.S.C. § 2679(b)(1). Generally, the United States may not be sued without its consent, and its consent must be unequivocally manifested in the plain language of a statute. *Lane v Pena*, 518 U.S.187, 192 (1996). "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Id.* (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992)). Pursuant to the FTCA, "[t]he United States shall be liable, . . . relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." Title 28 U.S.C. § 2674.

Because the FTCA serves as a waiver of sovereign immunity that is to be strictly construed, the court lacks subject matter jurisdiction to hear an FTCA claim against the

individual defendant, Rick Perkins. *Wood v. Standard Products Co., Inc.*, 671 F.2d 825, 829–30 (4th Cir. 1982). The United States is the only proper defendant in an FTCA action, and Perkins should be dismissed from all claims arising under the FTCA.

Plaintiff appears to have administratively exhausted his FTCA claim, as he filed an administrative tort claim on or about November 14, 2016, with the Civil Division, Torts Branch, in Washington, D.C. [ECF No. 1-2 at 2–4]. In that claim, Plaintiff alleged as follows:

> Mr. R. Perkins, NRAEMT is knowingly negligent in failing to provide me supplies for my CPAP machine in a timely manner. Due to Mr. Perkins medical background, he is aware that Sleep Apnia is when a person stops breathing at night. When oxygen is restricted to the brain, the brain is damaged, with can lead to a stroke, heart attack, and permanent brain damage. I am suffering severe headaches and memory loss due to his actions.

*Id.* at 3. Plaintiff described the nature and extent of his injury as "Negligence $20,000,000.00, Pain and Suffering $5,000,000.00." *Id.*

The United States investigated and denied Plaintiff's claim, finding that he did not sustain any injury caused by any negligent or wrongful act or omission of any BOP employee acting within the scope of his employment. [ECF No. 1–2 at 5–6].

    2.    Plaintiff's Institutional and Medical History

Plaintiff's first BOP institution of incarceration was the ADX in Florence, Colorado, where he arrived on July 1, 2013. [ECF No. 19-3: SENTRY, Inmate History]. On July 1, 2013, Plaintiff had an initial Health Screen [ECF No. 19-4 at 1–6], in which he reported a history of sleep apnea, *id.* at 4. He obtained a CPAP machine prior to his

5

incarceration [ECF No. 19-4 at 22], which he possessed at his intake on July 1, 2013. [ECF No. 19-5 at 1].

On July 12, 2013, Plaintiff had a complete physical performed by medical staff [ECF No. 19-4 at 10–19] and reported he was using a CPAP machine, *id.* at 14. Plaintiff was instructed how to obtain medical, dental, and mental health care. *Id.* at 19.

On August 19, 2015, Plaintiff reported to Health Services for a follow-up blood pressure check, and he requested and was referred for a pulmonology consult and an adjustment of his CPAP machine. *Id.* at 21–22. Plaintiff reported that due to his incarceration, he never followed up with a pulmonologist prior to his 2013 incarceration. *Id.* He stated his CPAP machine did not work all the time and he felt he needed a replacement. *Id.* On August 27, 2015, the Utilization Review Committee approved Plaintiff to see a pulmonologist for a sleep study. *Id.* at 23.

On September 30, 2015, the pulmonologist conducted the sleep study, finding Plaintiff had obstructive sleep apnea and that an "Auto CPAP would be effective in treating" it. *Id.* at 24–25. On October 1, 2015, the Clinical Director reviewed the results of Plaintiff's sleep study. *Id.* at 26–27. The record does not indicate whether a new CPAP machine was approved or provided.

On October 20, 2015, Plaintiff was transferred from ADX Florence and arrived at FCI-Estill on October 22, 2015. [ECF No. 19-3]. He had an initial Health Screen at FCI Estill that day, in which sleep apnea was listed as one of his current medical conditions. [ECF No. 19-4 at 28–32]. Plaintiff informed medical staff that he used a CPAP machine,

which was listed as a device with his intake. *Id.* at 30–31. Plaintiff was instructed how to obtain medical, dental, and mental health care. *Id.* at 32.

On October 29, 2015, Plaintiff was seen for his 14-day evaluation in the Chronic Care Clinic ("CCC") by the Clinical Director, at which Plaintiff reported a history of sleep apnea, but indicated he had not used a CPAP machine prior to his incarceration. *Id.* at 34–39. Plaintiff discussed his other medical conditions, including hypertension and tenia pedis. He reported feeling well and had no pain. *Id.* He was assessed with sleep apnea and the need for a titration study and a CPAP machine. *Id.* at 37.

Plaintiff next reported to medical on April 13, 2016, for his scheduled CCC appointment. *Id.* at 40–44. He did not complain about his sleep apnea or indicate having trouble with his CPAP machine. *Id.* An examination showed he was in no acute distress and had "no complaints." *Id.* at 41. Plaintiff was instructed how to obtain medical, dental, and mental health care. *Id.* at 43.

From April 14, 2016, to January 17, 2017, medical records reveal that Plaintiff did not complain about any problems with his sleep apnea or CPAP machine, even though he was seen by medical staff a few more times for blood pressure checks and a CCC appointment. *Id.* at 45–61; *see generally* ECF No. 19-5.

Although Plaintiff's medical records reflect that he never complained about his CPAP machine to Health Services, he claims in his response that he sent several "cop-outs" or "Requests to Staff" concerning needing supplies for his CPAP machine. Specifically, Plaintiff claims he sent requests dated November 19, 2015, January 6, 2016, October 12, 2016, and October 21, 2016 [ECF Nos. 23-7–23-10], and they went

7

unanswered. The requests that Plaintiff attaches to his response do not indicate any receipt by a staff member. *Id.*

On January 18, 2017, Perkins met with Plaintiff, after becoming aware that he had filed a tort claim concerning his CPAP machine. [ECF No. 19-6]. In this meeting, Plaintiff told Perkins he had not received filters for his CPAP machine. *Id.* Perkins told Plaintiff he would bring him new filters and a humidifier chamber the next day. *Id.* On January 19, 2017, Perkins met with Plaintiff to issue him the supplies, but Plaintiff told Perkins that the filters were not the same ones that he used. *Id.* Perkins had Plaintiff bring over his CPAP machine from his housing unit for comparison. *Id.* Perkins saw that Plaintiff's CPAP machine was an older one from another institution, and he issued him a new CPAP machine compatible with supplies FCI-Estill keeps stocked. *Id.* Plaintiff was instructed to notify staff when he required new supplies, as documented in his medical records that day. [ECF No. 19-4 at 62; 19-5 at 1, 6]. On February 15, 2017, Perkins issued Plaintiff a replacement nasal mask for his CPAP machine. [ECF No. 19-4 at 63].

In a memorandum dated February 1, 2017, to a legal technician apparently in follow-up to Plaintiff's administrative claim, Perkins wrote that he had "not received any BP-8.5 or BP-9 from [Plaintiff] regarding his c-pap machine malfunctioning or needing supplies." [ECF No. 23-11 at 2].

The record reflects Plaintiff was provided additional supplies, such as distilled water and filters, as needed. [ECF No. 19-5 at 7]. At Plaintiff's subsequent medical appointments, he did not complain about his sleep apnea, his CPAP machine, or supplies. [ECF No. 19-4 at 64–69]. Specifically, Plaintiff did not report to Health Services about

8

having a "severe headache, heart palpitations, labored breathing, chest pains, and a runny nose on October 2, 2016," despite having been scheduled to be seen by Health Services on October 6, 2016, by an optometrist. [ECF No. 19-4 at 52, 54]. The administrative note for October 6, 2016, indicates:

> Inmate was on call out for the outside eye doctor and did not show. Inmate had complained of not being seen. Had to call for this inmate twice. Inmate was seen by the eye doctor and is asking for transitional lens. Per eye doctor inmate does not qualify. Inmate does state he is filing paperwork.

*Id.* at 52. Plaintiff was also seen at Health Services for a CCC visit on October 27, 2016, at which time, he "appear[ed] well and without medical complaint. He has a history of HTN; he reports to take all medications as prescribed; exercises by walking 3–5 miles daily. He denies chest pain, SOB, palpitations, dizziness, headache and recent illness." *Id.* at 56. He indicated he had "no" pain. *Id.* Further, Plaintiff's psychology records indicate he never reported any emotional pain or mental distress regarding his CPAP machine or becoming sick as a result of lack of maintenance of his CPAP machine. [ECF No. 19-7 at 1–6].

### 3.    No Dispute of Fact Concerning Breach or Damages

Defendants admit they had a duty to provide Plaintiff with a proper, working CPAP machine. Defendants deny that they breached such duty, and the evidence supports such denial. [ECF No. 1-2 at 5–6; *see generally* ECF Nos. 19-4–19-6]. Plaintiff argues that because he arrived at FCI-Estill with a CPAP machine, Defendants "knew or shown have known" that it would need to be checked on a regular basis and that he would need "masks, filters, tubes, and Distilled water . . . ." [ECF No. 23 at 5]. The undersigned

rejects Plaintiff's invitation to make this logical leap. The more appropriate logical inference is that when Plaintiff chose to use his CPAP machine and needed maintenance or supplies, that he would inform Health Services. Plaintiff's medical records reflect that he did not complain about any problems with his sleep apnea or CPAP machine, aside from his intake evaluation, even though he was seen by medical staff for regular and requested appointments. *Id.* at 45–61; *see generally* ECF No. 19-5.

Additionally, the evidence does not show Plaintiff suffered an injury or loss caused by the negligence or wrongful act or omission of Perkins or any other BOP staff member acting within the scope of their employment at FCI-Estill. *Id.* Even though Plaintiff had a CPAP machine when he arrived at FCI-Estill, there are no records to show he ever delivered any complaints about his CPAP machine or supplies to Perkins or the FCI-Estill medical staff. [ECF Nos. 19-4–19-6]. When Perkins was informed that Plaintiff had an issue about his CPAP machine, he immediately met with him to resolve his issue. [ECF No. 19-3 at 62; ECF No. 19-6].

There is no evidence in Plaintiff's medical records that he reported to Health Services that he became sick because of lack of maintenance of his CPAP machine. [ECF Nos. 19-4–19-5]. Specifically, Plaintiff did not report to medical on October 2, 2016, the date set forth in the Complaint, or October 12, 2016, the date set forth in his SF-95. *Id.*; ECF No. 1 at 3; ECF No. 1-2 at 3. Plaintiff was seen on October 27, 2016, for his regularly-scheduled CCC appointment and reported no complaints. [ECF Nos. 19-3 at 56–60]. He denied chest pain, shortness of breath, dizziness, headache and recent illness. *Id.* Finally, Plaintiff's psychology records do not reflect any reports of emotional pain or

mental distress in regard to his CPAP machine or becoming sick as a result of lack of maintenance of his CPAP machine. [ECF No. 19-7].

Plaintiff has failed to demonstrate that the United States breached a duty to him concerning his CPAP machine or supplies, let alone that he suffered damage proximately resulting from any such breach. Because there appears to be no genuine dispute of material fact, the court should grant Defendants summary judgment.

III. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends granting Defendants' motion for summary judgment [ECF No. 19].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

September 27, 2017  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).